**UNITED STATES DISTRICT COURT**
EASTERN DISTRICT OF PENNSYLVANIA

BLERIM CENAJ, Plaintiff,

v.

UNITED STATES OF AMERICA;
DONALD J. TRUMP, in his individual capacity;
UNITED STATES DEPARTMENT OF JUSTICE;
FEDERAL BUREAU OF INVESTIGATION;
VAN DER VEEN, HARTSHORN & LEVIN;
MICHAEL T. VAN DER VEEN, in his individual capacity;
UNIVERSITY OF PENNSYLVANIA HEALTH SYSTEM (PENN MEDICINE);
JEFFERSON ABINGTON HOSPITAL;
REDEEMER HEALTH (HOLY REDEEMER HOSPITAL);
MONTGOMERY COUNTY EMERGENCY SERVICE, INC.;
TRINITY HEALTH MID-ATLANTIC (NAZARETH HOSPITAL); and
DAVID H. McCORMICK, in his individual capacity,
Defendants.

Civil Action No.:
_______________

JURY TRIAL DEMANDED
(to the extent legally available)

# CIVIL COMPLAINT

Plaintiff Blerim Cenaj, appearing pro se, states as follows:

## I. NATURE OF ACTION

**1.** Plaintiff Blerim Cenaj is a United States citizen living in Huntingdon Valley, Pennsylvania. He reports a series of encounters with law-enforcement officers, medical facilities, clinicians, psychiatric personnel, and court-related personnel during 2025 and 2026. He describes physical symptoms, disruption of his family life, expenses, psychological distress, and concerns about his ability to obtain independent legal assistance.

**2.** Plaintiff alleges that he believes Donald J. Trump personally authorized an extrajudicial attempt on Plaintiff's life, that Justice Department officials transmitted or facilitated that alleged instruction, and that FBI personnel were to implement it directly or through other actors. This is his asserted interpretation of events. The materials presently identified do not include an authenticated presidential directive, DOJ transmission, named FBI operative, or independently verified link connecting the reported local and clinical encounters to such an operation.

**3.** Plaintiff seeks examination of each identifiable incident on its own facts. Allegations concerning federal coordination, retaliation, intentional medical injury, or attempted killing must be proved independently; disputed care, perceived danger, temporal proximity, or alleged motive do not establish those conclusions.

4. Plaintiff identifies van der Veen, Hartshorn & Levin and Michael T. van der Veen in connection with prospective-legal-representation events. Plaintiff also identifies five healthcare institutional operators based on his treatment encounters and separately names Senator David H. McCormick in connection with constituent correspondence. The alleged misconduct and legal basis for liability of each proposed defendant must be evaluated independently; inclusion in the caption does not establish a coordinated agreement.

## II. PARTIES, JURISDICTION, AND VENUE

**5.** Plaintiff resides in Montgomery County, Pennsylvania. Defendant United States of America is the federal sovereign. Any claim against it requires an applicable statutory waiver of sovereign immunity, and qualifying Federal Tort Claims Act claims ordinarily require prior agency presentation and exhaustion.

**6.** Defendant Donald J. Trump is named in his individual capacity. Plaintiff characterizes the hypothesized private retaliatory conduct as outside official presidential functions; however, the characterization does not decide immunity, which is determined by the court under the governing official-acts cases.

**7.** The United States Department of Justice and the Federal Bureau of Investigation are federal governmental entities. Plaintiff names them in his proposed theory of institutional involvement, subject to sovereign immunity, cause-of-action and proper-party restrictions. Plaintiff also identifies van der Veen, Hartshorn &

Levin as the law firm he contacted for counsel, and Michael T. van der Veen as its publicly identified founder; each firm-related person's individual responsibility must be supported by evidence.

**8.** Plaintiff identifies 28 U.S.C. § 1331 as a potential subject-matter jurisdiction statute only insofar as a separately recognized federal claim is properly pleaded. This statute alone does not create a damages cause of action, waive immunity, or authorize a generalized judicial investigation. Venue may be proper in the Eastern District of Pennsylvania for qualifying claims associated with events occurring here, subject to claim-specific venue rules.

**9.** The present source materials do not establish that Plaintiff presented and exhausted a qualifying administrative tort claim to a federal agency under 28 U.S.C. § 2675. The current record therefore does not substantiate an immediately maintainable FTCA claim. No independent basis establishing federal subject-matter jurisdiction over all local medical and professional disputes has yet been identified.

## II.A. ADDITIONAL PROPOSED MEDICAL-FACILITY DEFENDANTS

10. The following operating institutions are included in the proposed caption so the relevant care can be identified facility by facility. A defendant's proper legal name, responsible affiliate, and legal basis for suit must be verified from records before filing.

11. (a) University of Pennsylvania Health System (Penn Medicine). Plaintiff describes cardiology, neurology and primary-care encounters involving communication of aortic findings, evaluation of symptoms, medication counseling and informed consent. He seeks a record-based assessment of the actual care and its consequences, not an inference of deliberate harm solely from disagreement with medical decisions.

12. (b) Jefferson Abington Hospital (Jefferson Health). Plaintiff describes repeated cardiovascular consultations and an October 13–14, 2026 emergency visit, including prolonged chest symptoms and questions about test selection, discharge planning and intravenous care. The responsible legal entity for each visit must be confirmed.

13. (c) Redeemer Health (Holy Redeemer Hospital). Plaintiff reports emergency-department visits in October 2026 for chest discomfort and elevated blood pressure or heart rate, and questions the adequacy of evaluation and follow-up in light of his aortic history.

14. (d) Montgomery County Emergency Service, Inc. (MCES). Plaintiff reports involuntary psychiatric evaluation and care, a confrontation involving physical force and a racial slur, injections after medication refusal, disputed antipsychotic treatment, and difficulty contacting legal offices. These events may raise distinct treatment, consent, restraint, patient-rights or state-law issues.

15. (e) Trinity Health Mid-Atlantic (Nazareth Hospital). Plaintiff reports a separate emergency visit around October 10, 2026 concerning chest symptoms and breathing difficulty; records are needed to verify the exact visit, attending facility, care and outcome.

16. Plaintiff has also reported counseling through Lyra Health and specialty visits with individual doctors; those persons or entities are discussed in the narrative but are not newly named as defendants by this revision. No asserted institutional affiliation should be inferred to mean that a facility or clinician agreed to any alleged federal plan.

## II.B. ADDITIONAL PROPOSED CONGRESSIONAL DEFENDANT

17. (f) David H. McCormick, publicly known as Senator Dave McCormick, is a United States Senator from Pennsylvania. Plaintiff names him in his individual capacity as an additional proposed defendant concerning the response of his office to Plaintiff's constituent communications about the FBI. Plaintiff attributes alleged misrepresentation and an inadequate casework response to that office, as described in Section IV.F. The presently reviewed correspondence does not identify an independent directive by the Senator authorizing the alleged acts of other defendants.

## III. FACTUAL ALLEGATIONS AND CHRONOLOGY

### A. Cardiovascular findings, treating relationships, and symptoms

18. On August 26, 2025, Plaintiff reports coronary CT angiography documenting aortic-root enlargement of approximately 43 mm and ascending-aorta enlargement of approximately 41 mm. In 2026, Plaintiff cites aortic-root enlargement near 45 mm on echocardiography and an October 2 gated chest CT measurement of approximately 42 mm of the ascending aorta. Differences between measurements at different locations and by different methods do not by themselves establish rapid progression.

19. Plaintiff reports multiple contacts with cardiologists Carl Reynolds, MD; Eyad I. Kanawati, MD; and Marc Lee Schwartz, MD. He disputes whether aortic measurements, surveillance needs, symptoms, and risks were consistently explained and followed up. The records needed to evaluate the clinical standard include original images, reports, visit notes, portal communications, referrals, and specialist recommendations.

20. In October 2026, Plaintiff reports recurrent chest pain or pressure, shortness of breath or air hunger, elevated blood pressure and tachycardia. He describes encounters with Penn Medicine clinicians, primary-care physician Maxwell Van Hoven, MD, and emergency departments at Holy Redeemer Hospital, Jefferson Abington Hospital, and a separately described October 10 visit to Nazareth Hospital. He disputes aspects of assessment, cardiac testing, discharge decisions, and communication. These are allegations of care concerns, not demonstrated purposeful injury.

21. During an overnight October 13–14 emergency visit to Jefferson Abington, Plaintiff recalls seeing a clear-fluid syringe during IV/catheter care, which he found alarming. The contents, administration, and purpose have not been established by medication administration or nursing records; an ordinary saline flush is a possible clinical explanation.

22. Plaintiff reports past facial swelling and tachycardia associated with lithium and later lithium prescriptions reportedly reaching 900 mg daily. He requests review of allergy lists, prescriber rationale, blood levels, renal and thyroid monitoring, and symptom response. The current materials do not establish that lithium caused his aortic enlargement or that a prescriber intentionally caused harm.

23. Plaintiff has also questioned testosterone replacement therapy prescribed or managed in endocrinology, including his treatment associated with Achilles Papersenos, and whether blood-pressure, hematocrit, and cardiovascular risks were appropriately addressed. He has separately questioned neurological counseling from Matthew Schindler, MD, PhD, about cladribine (Mavenclad), risks, alternatives, and prior-authorization procedures. The record does not establish that the medication was taken or caused injury.

### B. Police contacts and public-safety incidents

24. On September 2, 2026, Plaintiff reports observing what appeared to be a long gun with an optic in an apparently unattended police vehicle near Lower Moreland Middle School. He called dispatch and later heard that the vehicle was secured. The observation and response warrant review under any applicable storage and security policies, but no officer assault or federal direction is established by the materials described.

25. On September 5, 2026, Plaintiff reports encountering what appeared to be a DUI checkpoint at approximately 12:28 a.m. and making a 52-second recording. He states that he complied and departed without physical injury. He interpreted the encounter as possibly targeted, but does not presently identify a seizure or force independently shown to be unlawful, or records connecting the checkpoint to federal personnel.

26. Plaintiff has also described other interactions involving the Philadelphia Police Department and Lower Moreland Township Police Department. A viable claim for a particular stop would require a stop-specific chronology, identity of the officer, reason for the encounter, what occurred, whether a constitutional seizure took place, and the supporting dispatch, body-camera, and citation records.

### C. Involuntary psychiatric care and treatment at MCES

27. Plaintiff reports involuntary psychiatric hospitalization at Montgomery County Emergency Service (MCES) under Pennsylvania Sections 302 and 303. The source documents contain inconsistent or approximate references to dates; the admission date(s), certification, examinations, and hearing record must be reconciled from official records.

28. Plaintiff remembers a very brief initial psychiatric assessment, disputes parts of the diagnostic reasoning, and questions how the medical director relied on examination notes at the Section 303 hearing. He reports dissatisfaction with assistance from appointed counsel. These claims require evaluation under Pennsylvania mental-health and procedural law and are not, by themselves, evidence of federal interference.

29. Plaintiff reports that a staff member identified to him as “Shawn” made a verbal threat, used a racial slur, and physically brought him to the floor after Plaintiff requested a supervisor. Plaintiff says the incident was relayed through family communications and a Department of Health complaint. Staff identity, contemporaneous documentation, force justification, injuries, witnesses, and available footage are important to an independent assessment.

30. Plaintiff reports refusing oral olanzapine, after which several staff members physically held or repositioned him and administered two injections over his objection. He understood olanzapine may have been involved, but has not established the drug names or quantities. He questions clinical emergency justification, consent, restraint authorization, de-escalation, and post-injection monitoring.

31. Plaintiff reports olanzapine dosing reaching approximately 30 mg and haloperidol reaching approximately 15 mg during episodes of care at MCES. He reports severe restlessness or pacing, cognitive impairment, sedation, and weight gain. He has identified psychiatrist Amir Mohebbi, MD, and clinician Christina Cavanna in earlier concerns concerning prescribing and psychiatric assessment. Medication administration records, orders, assessments, and an independent clinical review are necessary to evaluate a claim of negligent or improper care.

32. Plaintiff reports repeated failures to connect by phone with the Montgomery County Public Defender and local legal-aid offices while other calls were successful. He sought family assistance in making contact. The reasons for unsuccessful calls, availability of confidential alternatives, any effect on a legal proceeding, and any intentional restriction remain to be established.

33. Plaintiff perceived certain other people in the facility as potentially covert federal personnel and worried that food, beverages, clothing, and bedding were unsafe. These were experiences and concerns he reported to others; the reviewed materials do not establish any such identity, adulteration, or purposeful conduct. The appropriate inquiry concerns what he reported, physical symptoms, facility safety procedures, and clinical responses.

### D. Additional psychiatric, counseling, and health concerns

34. Outside the psychiatric hospitalization, Plaintiff identifies Ayyappan Venkatraman, MD, in disputes about psychiatric diagnosis, medication selection, cognitive adverse effects, and clinical documentation. Such matters may be evaluated through records, prescriber explanations, and medical standards; no evidence currently connects this clinician to any federal operational directive.

35. Plaintiff reports an in-person counseling session on November 13, 2026, with therapist Alan Schweizer. He recalls a statement analogizing schools to “human shields” and found the analogy troubling in the context of his concerns about family safety. He prepared professional grievances and questions whether the discussion was therapeutically appropriate. The materials do not establish improper outside instructions or that a disclosed threat was real.

36. Plaintiff reports experiencing significant chest discomfort after a November 11, 2026 restaurant order and worrying that the food had been tampered with. An order confirmation establishes a purchase, not poisoning

or its cause. Appropriate clinical evaluation and physical evidence would be necessary to assess the symptoms and any causation.

### E. Residential fear, communication concerns, and effects on daily life

37. During October 14–15, 2026, Plaintiff reports an episode of severe fear that an armed attack could occur at a residence, prompting him to hide or shelter inside. He suspected federal or military involvement; the reviewed materials do not independently identify an armed assailant, a weapon pointed at Plaintiff, or an official directive.

38. Plaintiff also describes concerns about communications, home cameras, physical security, and email-delivery problems. He undertook extensive legal, regulatory, political, and media outreach. Technical nondelivery, unfamiliar people, or security vulnerabilities do not independently establish surveillance, hacking, retaliation, or interference by the defendants.

39. Plaintiff reports extensive efforts to obtain legal representation and has considered proceeding pro se. His separate October 5–7, 2026 consultation with van der Veen, Hartshorn & Levin is detailed below; Plaintiff questions the information he received and the handling of his prospective-client disclosures.

## IV. PROSPECTIVE LEGAL REPRESENTATION: LAW FIRM CONTACTS

40. Plaintiff contacted van der Veen, Hartshorn & Levin on October 5, 2026 seeking independent counsel concerning contemplated civil-rights litigation involving the FBI and concerns about interference with medical care. Plaintiff also explained that he believed, without confirmation of charges, that a federal investigation might exist.

41. Plaintiff's telephone history records an outgoing call to the firm's publicly listed number, (215) 610-3440, beginning approximately 12:08 p.m. on October 5 and lasting approximately 14 minutes. Plaintiff reports first speaking with attorney Steven R. Bryson, who advised that a potential criminal matter should be addressed and said substantially, "Let me transfer you to a criminal defense attorney."

42. The transferred speaker introduced himself, as Plaintiff recalls, as "Brian." Plaintiff understood him to be the criminal-defense lawyer promised by Bryson. Plaintiff does not have the firm's routing records or a recording establishing the speaker's full name, licensing status, or job title.

43. Plaintiff recalls the speaker asking whether agents had approached him, discussing his concern about indirect FBI activity, and characterizing the reported situation as "typical." These recollections concern statements made during a proposed legal consultation; they do not establish that an investigation or covert operation actually existed.

44. Plaintiff recalls that the speaker proposed that Plaintiff "give a statement." Plaintiff questioned that advice. The speaker allegedly assured Plaintiff that a statement "can only help," that it was "to protect" him, and that it "can only be used against you if you choose to testify." Plaintiff declined to provide the proposed statement.

45. Plaintiff was not informed who would receive the statement, whether it would be sworn, recorded, or transmitted to investigators, or whether any proffer, immunity, or use-restriction agreement existed. Plaintiff seeks review of whether those assurances were accurate and whether they were made with adequate knowledge of the legal circumstances.

46. The speaker allegedly quoted a $7,500 retainer, discussed potential Affirm financing with approximately $2,500 upfront, described entering an appearance, and promised an engagement agreement later October 5. Plaintiff asked when attorney-client privilege would begin and recalls being told, "Now." Plaintiff states the promised agreement did not arrive on October 5.

47. On October 7 at approximately 9:19 a.m., Plaintiff again telephoned (215) 610-3440. His call history reflects an outgoing call lasting approximately four minutes. A receptionist transferred him to a different person called Brian, who reportedly said he did not remember the earlier conversation and told Plaintiff there were

two people named Brian. Plaintiff was transferred to Brian Rapuano's voicemail and thought he recognized the voice. Voice recognition alone does not establish identity.

48. At approximately 9:36 a.m. October 7, Plaintiff received a call from the firm's other number, (215) 546-1000, that lasted approximately one minute according to his call history. Plaintiff recalls Bryson stating substantially, "I don't know why you remembered Brian. I transferred you to Adam. Did you get the contract? He was supposed to send it Monday." Plaintiff describes this as a material discrepancy between his recollection and Bryson's account.

49. Plaintiff has questioned whether the October 5 speaker was an attorney or a nonlawyer employee, including a legal assistant. Plaintiff does not presently possess definitive evidence of that person's identity or status. Plaintiff alleges that the apparent provision of substantive defense advice under a representation of attorney status, if confirmed, warrants scrutiny of attorney supervision and the duty to protect prospective-client information.

50. An October 7 electronic-signature invitation displayed the firm's name and the message "Michael van der Veen sent you a document to review and sign," identifying a document titled "10.7.26 Contract Cenaj.pdf." The screenshot shows the email address klogan@mtvlaw.com. This invitation is evidence of an electronic document workflow; it does not independently establish who drafted the document, who initiated transmission, or that the founder personally knew of Plaintiff's consultation.

51. Plaintiff further alleges that the sequence caused him significant concern about whether information disclosed while seeking legal advice was being collected or used for a non-representation purpose. He suspects possible improper outside influence, including federal involvement. The reviewed material does not include an authenticated communication between the firm or its founder and federal authorities concerning Plaintiff, an identified recipient of Plaintiff's proposed statement, or proof that the firm disclosed confidential information.

52. Plaintiff has described the differing identifications as a potential cover-up, including possible alteration or reconstruction of records. That characterization is his allegation. The present record does not establish concealment, falsification, or destruction; contemporaneous call routing, intake notes, document histories and internal communications would be needed to test it.

53. Plaintiff states that two complaints concerning the firm-related events were accepted through the Pennsylvania disciplinary complaint system on October 7, 2026. Records in Plaintiff's file report confirmation numbers 20261007008 and 20261007013. The acceptance of complaints documents submission, not findings of professional misconduct.

54. Plaintiff identifies Michael T. van der Veen as the founder, based on the firm's publicly available description. Plaintiff seeks to evaluate the founder's possible personal responsibility for policies, supervision, or specific directions. At present, Plaintiff does not identify a firsthand encounter with the founder, a directive issued by him concerning Plaintiff, or an established personal role in any alleged disclosure or federal agreement.

55. Plaintiff alleges, on information and belief, that the firm and potentially its leadership may have acted with undisclosed outside influence relevant to Plaintiff's efforts to obtain independent counsel. Plaintiff understands that a federal conspiracy claim would require concrete facts showing an agreement and legally actionable conduct, beyond discrepancies, suspicion, the firm's relationship with other clients, or the founder's status.

56. The communications were made in the context of seeking legal representation. Plaintiff asserts that they should be evaluated under duties owed to prospective clients. The participation of a nonlawyer assistant does not, by itself, eliminate any privilege or confidentiality protection that otherwise applies.

### D. Reported Obstacles to Legal Counsel and Court Access

57. Plaintiff alleges that his efforts to obtain independent legal counsel have faced serious and recurring obstacles, which he has experienced as a blockade to meaningful legal access. While hospitalized at MCES, Plaintiff reports that calls to the Montgomery County Public Defender and local legal-aid offices repeatedly failed

even when some calls to other county offices connected. He states that he reported these difficulties to facility personnel and asked relatives to help reach counsel. The reason those calls failed, and whether any person deliberately restricted them, remains to be determined from contemporaneous records.

58. Plaintiff states that he contacted numerous private lawyers without securing ongoing representation. He also describes the October 5–7, 2026 contacts with van der Veen, Hartshorn & Levin, the unresolved identity of a prospective legal adviser, the proposed statement, the promised but initially undelivered engagement agreement, and his confidentiality concerns, as described above. On October 7, he reports encountering technical submission errors while attempting to file professional complaints from home; he later completed submissions from a public library, reflected in confirmation numbers 20261007008 and 20261007013. These facts describe obstacles he encountered and actions he took, but do not alone establish the cause of the technical failures or any coordination among defendants.

59. Plaintiff suspects that some of these barriers were the product of intentional interference with his ability to consult independent counsel and seek judicial redress. Plaintiff presents that as a disputed allegation requiring proof, not as an existing court finding that any defendant imposed a legal-access restriction. He is proceeding pro se because he has not retained counsel, while seeking a fair opportunity to communicate privately with prospective attorneys, preserve legally protected consultations, and litigate without unlawful obstruction or retaliation.

## IV.E. PRIOR COMPLAINTS, PETITIONS, AND INDEPENDENT OUTREACH

60. Plaintiff states that he has repeatedly sought outside review of his experiences through governmental regulators, professional licensing authorities, civil-rights organizations, elected officials, attorneys, human-rights organizations, and domestic and international news organizations.

61. The agencies and bodies he reports contacting or preparing submissions for include the United States Department of Health and Human Services (HHS), United States Department of Justice, DOJ Office of Inspector General, DOJ Civil Rights Division, Pennsylvania Department of Health, Pennsylvania Department of State and professional licensing boards, and the Office of Disciplinary Counsel of the Disciplinary Board of the Supreme Court of Pennsylvania.

62. The available October 7, 2026 contemporaneous record contains two Pennsylvania attorney-disciplinary online submission confirmations, numbered 20261007008 and 20261007013. Plaintiff also reports that a family member transmitted a complaint concerning his MCES treatment to Pennsylvania’s Department of Health. A revised MCES facility-complaint text was prepared on November 10, 2026.

63. The documentary record contains a federal complaint dated October 9, 2026 addressed to the United States Attorney’s Office, a November 15 Pennsylvania Department of State complaint statement, and other draft submissions. For these items, preparation or an addressed document does not alone show actual delivery, acknowledgment, investigation or a finding. Plaintiff reports additional submissions, for which receipts should be produced if available.

64. Plaintiff reports extensive attempts to obtain representation or assistance from attorneys and independent civil-rights organizations, including the ACLU of Pennsylvania, as well as outreach to congressional offices, human-rights organizations and investigative reporters in the United States and abroad. The volume and recipients of these contacts should be established from original outgoing messages, acknowledgments and submission records rather than estimates.

65. Plaintiff describes electronic filing or message-delivery difficulties during some outreach. On October 7, 2026, he reported that two disciplinary submissions succeeded from a public-library network after unsuccessful attempts from home. Those successes are documented; the cause of the earlier failures is not established by the submission receipts.

66. Plaintiff offers his reporting history to establish the timing and content of his efforts to obtain review and redress. A complaint or notification is not itself proof that the underlying alleged misconduct occurred, that its recipient agreed with the allegation, or that the recipient made any investigative finding.

## IV.F. CORRESPONDENCE WITH SENATOR McCORMICK AND SENATE ETHICS REPORT

67. In 2025, Plaintiff contacted Senator David H. McCormick's office concerning matters he described as problems with the Federal Bureau of Investigation and seeking assistance with federal authorities. A portion of a letter on United States Senate letterhead dated September 2, 2025, addressed to Plaintiff, expressly acknowledges that he contacted the office about "the issue you are experiencing with the FBI." The image provided contains only the beginning of the letter, and the complete response has not been authenticated in the materials reviewed.

68. Plaintiff reports that communications from the Senator's office led him to believe his concern would be referred or addressed through congressional constituent-services channels; he later understood the office to have characterized the matter as judicial and directed him toward the courts. The precise statements, any privacy-release authorization, the existence and content of any inquiry to the FBI, and any response from the FBI must be determined from the complete original correspondence and casework records.

69. Plaintiff alleges that the casework response misrepresented or failed to address the gravity of his concerns, frustrated his efforts to obtain independent assistance, and contributed to his belief that institutional accountability mechanisms were unavailable. In his later ethics complaint, Plaintiff characterized the handling of his constituent request as possible concealment or a cover-up. The visible correspondence does not independently establish intentional deception, concealment, interference with legal rights, or the Senator's personal participation in an unlawful agreement.

70. On November 13, 2026, Plaintiff sent emails displaying the title "Formal Ethics Complaint Concerning Senator Dave McCormick — Constituent Referral, Alleged Misrepresentation, and Subsequent Safety Concerns." A screenshot of Plaintiff's sent email shows the complaint directed to Senate ethics recipients, including a committee mailbox and a message addressed to committee leadership. Plaintiff describes these communications as an ethics complaint filed or submitted against Senator McCormick. The screenshot establishes evidence of transmission from Plaintiff's email account, but does not establish receipt, docketing, investigation, or a finding by the Senate Select Committee on Ethics.

71. Plaintiff requests that his September 2025 constituent communications and November 2026 ethics submission be evaluated on their original terms, including all complete letters, emails, privacy-release documents, casework entries, any referral actually made, and any response received. Plaintiff's present records do not establish direct communication between Senator McCormick and Donald J. Trump, DOJ, the FBI, a law firm, or the identified medical facilities about a plan to harm Plaintiff.

## V. REPORTED INJURIES

72. Plaintiff reports imaging-documented aortic dilation or enlargement, episodes of chest pain, breathing difficulty, tachycardia, elevated blood pressure, and repeat emergency evaluations. Plaintiff refers to a thoracic aortic aneurysm in some prior accounts. The exact diagnosis, dimensions and clinical significance must be confirmed against original imaging and the treating specialist's interpretation.

73. Plaintiff reports severe psychological distress, panic, impaired sleep, concentration and memory problems, medication-related restlessness, weight fluctuations, disruption of family activities, and expenses related to healthcare, security, transportation, and legal outreach. The amount of any recoverable damages and their relation to any particular legal breach require documentation.

74. The existence of aortic enlargement or other health consequences does not itself establish that any named defendant caused or worsened those conditions. An expert or other legally sufficient causal showing may be required depending on the claim.

## VI. LEGAL BASIS AND LIMITATIONS

75. Any federal constitutional claim against state or municipal personnel requires allegations of conduct under color of law, a particular violated right, causation, and personal involvement. Municipal liability additionally requires an actionable policy or custom. Merely identifying Philadelphia or Lower Moreland police in the chronology does not establish such a claim.

76. For each proposed medical institutional defendant, Plaintiff would need to identify the specific encounter, responsible legal entity, applicable duty or law, actionable departure, causation, and resulting injury. A private facility is not automatically a state actor. Pennsylvania professional-negligence procedures, including the certificate-of-merit requirement where applicable, require separate review.

77. Any federal-agency or presidential claim requires a legally recognized cause of action, appropriate defendant, factual basis, and consideration of sovereign and presidential immunity. For qualifying FTCA claims the United States rather than the agencies is normally the proper damages defendant, after completion of the administrative process. A private claimant cannot use this complaint to initiate criminal charges or compel an investigation.

78. Distinct treatment and law-enforcement events must meet Rules 20 and 21 governing joinder and severance. The theory that multiple events may be related is not, by itself, sufficient to establish a common transaction, agreement or conspiracy. Claims against private hospitals require an independently recognized statutory, constitutional, or state-law basis and appropriate subject-matter jurisdiction.

79. Plaintiff’s claim concerning Senator McCormick would require identification of a specific actionable misrepresentation or other nonlegislative wrongful act, the Senator’s legally attributable personal conduct, and an injury caused by that act. The Speech or Debate Clause protects legislative acts, but not all constituent-service activity is legislative. This distinction does not create a freestanding damages claim for an unsatisfactory congressional response or establish that any legal duty was breached.

## VII. PRAYER FOR RELIEF

80. Plaintiff requests relief within the Court’s jurisdiction and on proof of legally actionable claims: compensation for injury attributable to a legally responsible defendant; appropriate declaratory or prospective equitable relief; allowable costs; and other relief the Court deems lawful. Plaintiff separately requests consideration of particular unlawful interference with confidential legal communications if supported by evidence identifying the actor and conduct.

81. Specifically, if Plaintiff proves that an identified defendant has unlawfully obstructed or is imminently threatening his ability to communicate with counsel or prosecute a nonfrivolous claim, Plaintiff requests a narrowly tailored injunction ending that specific proven interference. Appropriate relief, if supported by the record and applicable jurisdictional requirements, may prohibit unlawful interference with confidential communications with prospective or retained attorneys, unauthorized disclosure of legally protected consultation information, and deliberate obstruction of Plaintiff’s submissions to this Court. Plaintiff does not request an order against unnamed persons or unspecified barriers; any injunction must identify the responsible defendant and the precise acts restrained.

82. Plaintiff does not seek to compel criminal prosecution, to require a private organization to represent him, or to obtain a blanket order removing an unidentified “blockade.” He recognizes that any access-to-courts claim or emergency order requires a recognized legal basis, specific evidence of interference and legally cognizable injury, and that the Court cannot order discovery or nonmonetary relief without satisfaction of applicable standards.

83. Plaintiff seeks no order compelling a Senator to conduct constituent casework, to investigate a particular allegation, or to influence any federal agency. As to proposed defendant McCormick, any relief is requested solely if an independently recognized cause of action, competent evidence of personal wrongdoing, causation, and a judicially available remedy can be established.

## VIII. REQUEST REGARDING COUNSEL

84. Plaintiff appears pro se because his extensive efforts to retain counsel have not resulted in an attorney entering an appearance. He contends that his experience of repeated barriers has impeded his pursuit of legal assistance and seeks judicial protection against any specific unlawful interference shown by admissible evidence. He is willing to retain or accept appropriate independent representation as soon as it becomes available. Plaintiff intends to seek legal assistance from the American Civil Liberties Union of Pennsylvania (ACLU-PA) and hopes that organization will independently consider his request for representation; Plaintiff understands that ACLU-PA alone chooses which matters it accepts, and he does not seek an order compelling it to represent him.

85. In light of the complexity of the issues, Plaintiff also respectfully requests that the Court, on a separate and properly supported motion if appropriate, consider available volunteer-counsel procedures or its pro bono attorney panels. Plaintiff acknowledges that a party in a civil action has no automatic entitlement to appointed counsel and that any referral or request for counsel is discretionary and subject to eligibility and the merits of the underlying litigation.

Dated: ____________________

Respectfully submitted,

_________________________________

Blerim Cenaj, pro se
539 Moreland Road
Huntingdon Valley, PA 19006
Telephone: (267) 770-8628
Email: Bscenaj@yahoo.com

## SCHEDULE A — REPORTING AND OUTREACH RECORD

Supplemental chronology of documented and reported submissions. This schedule lists records to authenticate; it is not a finding by any regulator.

| Agency / channel | Source status | Documents to preserve / confirm |
|---|---|---|
| PA Office of Disciplinary Counsel | Two online confirmations dated Oct. 7, 2026: 20261007008; 20261007013 | Submission receipts; 16-page disciplinary complaint; any ODC correspondence |
| Pennsylvania Department of Health | Prior MCES family-transmitted complaint reported; Nov. 10 revised complaint text located | Portal receipt, earlier family screenshots, acknowledgments, regulator outcome |
| Pennsylvania Department of State | Nov. 15 complaint text concerning counseling located; transmission not established by draft alone | Submission ID, acknowledgment, submitted version, attachments |
| DOJ / U.S. Attorney / DOJ Civil Rights | Oct. 9 federal complaint addressed to U.S. Attorney located; further outreach reported | Sent records, portal receipts, delivery confirmation, agency replies |
| DOJ Office of Inspector General | Outreach reported; no independent receipt in reviewed documents | Original report, date, confirmation, agency response |
| HHS / health-civil-rights channels | Outreach reported; submitted record not confirmed in files reviewed | Original submission, date, confirmation, case number |
| ACLU of Pennsylvania / legal advocates | Requests for counsel reported; outcome of each request to be confirmed | Intake forms, emails, acknowledgments, responses |
| Independent / international human-rights groups | Outreach reported; varied messages and public dossiers prepared | Recipient list, dates, delivery receipts, substantive replies |
| News media / investigative outlets | Extensive national/international outreach described | Original sent mail, delivery failures, responses, copies of dossiers |
| Congressional offices and elected officials | Outreach reported | Sent correspondence, confirmations and replies |
| Senate Select Committee on Ethics — McCormick | Nov. 13, 2026 sent-email screenshot of formal ethics complaint concerning Senator Dave McCormick; independent acknowledgment not shown | Full sent email(s), any attached complaint PDF, delivery headers, committee acknowledgment or reference number; Sept. 2, 2025 Senate letter in full |